No. 89-236

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

STATE MEDICAL OXYGEN AND
SUPPLY, INC., a Montana corporation,

        Plaintiff and Appellant,

   -vs-

AMERICAN MEDICAL OXYGEN CO., a Montana
corporation, J.C. LYNDES, GARY GOMEZ,
and RONALD WRIGHT,

        Defendants and Respondents.

_____

FILED
'89 NOV 28 AM 11 00
ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM:  District Court of the Eighth Judicial District
               In and for the County of Cascade
               The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        P. Mars Scott, Mulroney, Delaney and Scott
        Missoula, Montana

    For Respondent:

        Michael G. Moses, Moses Law Firm, Billings, Montana
        Philip P. McGimpsey, Billings, Montana

_____

Submitted on Briefs: October 13, 1989

Decided: November 30, 1989

Filed:

_____
                   Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Plaintiff, State Medical Oxygen and Supply, Inc. (State Med.), appeals the January 19, 1989 decision of the District Court of the Eighth Judicial District, Cascade County, finding that plaintiff's nondisclosure agreement violated § 28-2-703, MCA, and granting summary judgment in favor of defendants--American Medical Oxygen Co. (American Med.), J.C. Lyndes, Gary Gomez and Ronald Wright. We affirm.

The issues raised on appeal are:

1. Whether plaintiff's "Agreement of Employee not to Disclose Trade Secrets or Customer Lists of State Medical Supply, Inc." violates § 28-2-703, MCA, as being a contract that restrains the exercise of a lawful profession, trade or business of any kind; and

2. Whether the District Court erred by granting defendants' motion for summary judgment.

Plaintiff, State Med., is a Montana corporation engaged in the business of supplying oxygen and allied health care to patients in their homes and in hospitals. Upon State Med.'s formation in the early part of 1984, the directors of State Med. had its employees sign an agreement entitled, "Agreement of Employee not to Disclose Trade Secrets or Customer Lists of State Medical Supply, Inc." This Agreement provides that:

> The undersigned, an employee of State Medical Supply, Inc., in consideration of his employment, hereby agrees not, at any time or in any manner, either directly or indirectly, to divulge, disclose or communicate to any person, firm, or corporation, in any manner whatsoever, any information concerning any matters affecting or relating to the business of State Medical Supply, Inc.'s trade secrets and/or customer lists. Including without limiting the above, the employee agrees

2

not to divulge any of State Medical Supply, Inc.'s customers, the prices it obtains or has obtained from the sale of, or at which it sells or has sold, its products, or any other information concerning the business of State Medical Supply, Inc., its manner of operation, its plans, processes, or other data without regard to whether all of the foregoing matters will be deemed confidential, material, or important, the parties hereby stipulating that as between them, the same are important, material and confidential and gravely affect the effective and successive conduct of the business of State Medical Supply, Inc., and State Medical Supply, Inc.'s good will, and that any breach of the terms of this agreement shall be termed and considered a material breach.

This agreement shall remain in full force and effect during the undersigned employment and continuing for all time thereafter.

A violation of this agreement will entitle State Medical Supply, Inc., to seek damages and/or injunctive relief or any other remedy at law against the undersigned and the undersigned agrees to pay State Medical Supply, Inc.'s attorney's fees in prosecuting any breach of this agreement.

Several, if not all, of the employees of State Med. signed this Agreement.

Three State Med. employees--Link, Fatz and Tope--became unhappy with their jobs at State Med. and began to seek employment elsewhere. On August 9, 1985, these employees quit their jobs at State Med. and immediately began working for American Med., a Montana corporation also engaged in the business of supplying oxygen and allied health care to patients in their homes and in hospitals. When Link left

3

State Med.'s employ, he memorized his customer route and offered his customers an opportunity to switch from State Med. to American Med. Most of Link's regular customers made the switch.

On March 1, 1988, this Court decided State Medical Oxygen & Supply, Inc. v. American Medical Oxygen Co. (Mont. 1988), 750 P.2d 1085, 45 St.Rep. 349, which addressed issues initially raised by State Med. This Court affirmed in part, reversed in part and remanded for further proceedings, but did not address the issue of the nondisclosure agreement because the District Court had not yet ruled on it. State Medical Oxygen Supply, Inc., 750 P.2d at 1089, 45 St.Rep. at 355. On October 18, 1988, the parties stipulated to the dismissal with prejudice of defendant Link from this action. On November 30, 1988, the remaining defendants--American Med., Lyndes, Gomez and Wright--renewed their motion for summary judgment, asserting again that the nondisclosure agreement was void pursuant to § 28-2-703, MCA.

On January 19, 1989, the District Court granted defendants' motion for summary judgment, and stated that the nondisclosure agreement between State Med. and its employees not to divulge trade secrets or customer lists violated § 28-2-703, MCA, and therefore the court found it against public policy and unenforceable as a matter of law. The District Court certified this January 19, 1989 order as a final judgment under Rule 54(b), M.R.Civ.P. State Med. appeals.

The first issue that will be addressed by this Court is whether plaintiff's "Agreement of Employee not to Disclose Trade Secrets or Customer Lists of State Medical Supply, Inc." violates § 28-2-703, MCA.

Section 28-2-703, MCA, codifies Montana's public policy regarding contracts that restrains the exercise of a lawful

4

profession, trade or business of any kind. This statute provides that "[a]ny contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void." The two exceptions allow parties to agree that upon either the sale of goodwill of a business or the dissolution of a partnership, one or more of the parties will refrain from carrying on a similar business within a narrow designated area. Sections 28-2-704 and -705, MCA.

Prior to Dobbins, DeGuire & Tucker v. Rutherford, MacDonald & Olson (1985), 218 Mont. 392, 708 P.2d 577, this Court recognized a difference between covenants incident to an employment contract and those regarding the trade of a business or property. J.T. Miller Co. v. Madel (1978), 176 Mont. 49, 52-53, 575 P.2d 1321, 1323. When presented with a covenant not to compete that involved trade, this Court applied a three part test by which to discern reasonable covenants from unreasonable restraints. Under this test, a covenant not to compete is reasonable if it is (1) limited in operation either as to time or place; (2) based upon some good consideration; and (3) affords reasonable protection for and not impose an unreasonable burden upon the employer, the employee, or the public. O'Neill v. Ferraro (1979), 182 Mont. 214, 218-19, 596 P.2d 197, 199. In Dobbins, this Court determined that this test should also be applied to restrictive covenants that are found within employment contracts. Dobbins, 218 Mont. at 396-97, 708 P.2d at 580.

In the present case, State Med. has the burden of showing that its agreement does not violate § 28-2-703, MCA. First American Ins. Agency v. Gould (1983), 203 Mont. 217, 223, 661 P.2d 451, 454. State Med. did not assert nor prove that the sale of goodwill of a business or the dissolution of

5

a partnership occurred. Therefore, neither of the statutory exceptions--§§ 28-2-704 or -705, MCA--applies. State Med.'s agreement also does not pass the test of reasonableness. As stated in Dobbins and O'Neill, three essential things are required for an agreement to be considered reasonable. State Med.'s agreement, however, did not limit the restrictions as to either time or place and therefore did not meet the first essential criterion. We therefore do not find a need to proceed any further to determine whether the covenant meets the remaining two criteria. Although State Med. cites Dobbins, it does not argue that its agreement meets the three criteria. Instead, State Med. merely argues that the District Court erred because it did not make findings of fact or conclusions of law. However, Rule 52(a), M.R.Civ.P. and previous decisions do not require a district court to set forth findings of fact or conclusions of law when ruling on a summary judgment motion. Lewis v. State Dept. of Revenue (1984), 207 Mont. 361, 375, 675 P.2d 107, 114; Downs v. Smyk (1979), 185 Mont. 16, 19, 604 P.2d 307, 309.

State Med. also argues that the District Court confuses its contract, which they assert is a contract not to disclose trade secrets and/or customer lists with a contract that restrains the exercise of a lawful profession. State Med. then apparently attempts to persuade this Court that its agreement is not an employment contract and therefore it is not in violation of § 28-2-703, MCA. We disagree. Section 28-2-703, MCA, states that any contracts that restrain anyone from exercising a lawful profession, trade, or business is void. The statute does not limit the prohibition to employment contracts. In Dobbins, this Court erased any previously recognized differences between the treatment of trade and employment contracts which contain restrictive covenants. Therefore, State Med.'s attempts at

6

distinguishing its agreement as something other than an employment contract is not relevant to the issue presented on appeal. In light of the above, the District Court did not err in finding that State Med.'s agreement violated § 28-2-703, MCA, and thus finding the agreement void as against public policy and unenforceable as a matter of law.

The second issue raised on appeal is whether the District Court erred by granting defendants' motion for summary judgment.

The party seeking summary judgment is entitled to judgment only when no genuine issue exist as to any material facts and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The party moving for summary judgment has the initial burden of establishing that a genuine issue of material fact does not exist. Once this is established, the burden shifts to the party opposing the motion to demonstrate otherwise. Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 365-66, 600 P.2d 163, 167.

In the present case, the District Court ruled that State Med.'s agreement was in violation of § 28-2-703, MCA. The record demonstrates that defendants established that no genuine issue of material facts existed. The agreement on its face violates the statute and the law regarding restrictive covenants. The burden then shifted to State Med. State Med. attempted to rebut this evidence by bringing in extraneous information regarding tortious interference, which is the underlying basis for their amended complaint. The facts surrounding tortious interference are irrelevant to the sole issue on appeal of whether the nondisclosure agreement was in violation of § 28-2-703, MCA.

State Med. also argues that affidavits submitted by their employees puts into question whether or not their agreement was an employment contract. As we stated

previously, _any_ contracts, not just employment contracts, are in violation of § 28-2-703, MCA, if they restrain anyone from exercising a lawful profession, trade or business. In addition, the same standard of reasonableness applies to a restrictive covenant regardless of whether it is found within a trade contract or an employment contract. Therefore, evidence regarding whether the agreement was an employment contract is irrelevant to the question of whether it violated § 28-2-703, MCA. The District Court therefore did not err in granting defendants' motion for summary judgment.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8