No. 01-559

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 10

LAMOYNE HERRMANN and
SHERMAN TALKS DIFFERENT,

　　　　　Plaintiffs and Appellants,

　　　v.

WOLF POINT SCHOOL DISTRICT,

　　　　　Defendant and Respondent.

APPEAL FROM:　　District Court of the Fifteenth Judicial District,
　　　　　　　　In and for the County of Roosevelt, Cause No. DV-00-38
　　　　　　　　The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

　　　　　For Appellants:

　　　　　　　　Lawrence A. Anderson, Attorney at Law, Great Falls, Montana

　　　　　For Respondent:

　　　　　　　　Robert J. Savage, Savage Law Firm, Sidney, Montana

　　　　　　　　　　　　Submitted on Briefs:　March 13, 2003

　　　　　　　　　　　　　　　Decided:　January 27, 2004

Filed:

_____
　　　　　　　　　Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 LaMoyne Herrmann and Sherman Talks Different (Workers) sued the Wolf Point School District (WPSD or School District) for negligence and breach of contract for failing to include in construction project-related documents provisions requiring payment of prevailing wages under the Davis-Bacon Act (DBA or the Act). The School District moved to dismiss on the grounds that the District Court lacked subject matter jurisdiction. The Fifteenth Judicial District Court of Roosevelt County dismissed the Complaint. Workers appeal. We reverse and remand.

## ISSUE

¶2 Restated, the sole issue on appeal is whether the District Court erred in granting WPSD's Motion to Dismiss the Workers' Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The WPSD and the Wolf Point High School (High School) embarked on a project to construct an addition to the High School, which is located on the Fort Peck Indian Reservation. The project was financed by WPSD funds and Federal Impact Aid funds, with the majority of the funds coming from the federal program. The WPSD hired Braden-Pehlke Construction Company as the principal contractor and Hulsing and Associates as the architect for the project. One of these entities hired the House of Color, Inc., a North Dakota flooring and tile contractor licensed to do business in Montana, as a subcontractor on the project. Workers were employees of the House of Color.

2

¶4     At some time prior to December 1, 1999, the Workers contacted the Montana Department of Labor and Industry (DOLI) apparently complaining that they were not being paid DBA prevailing wages.  The Montana DOLI compliance specialist responded with a letter saying that it "appeared" that the High School project was subject to the Federal DBA rather than Montana's "Little DBA," and suggested that Workers contact the U.S. Department of  Labor (DOL) with any questions they had regarding the DBA requirements. The letter's author explained that she had spoken with the Superintendent of the WPSD who confirmed the use of Federal Impact Aid funds but who could not state, with certainty, what wage provisions were inserted in the contracts.  The author further explained that, upon the recommendation of the Superintendent, she had contacted Mr. Hulsing, the architect, who stated that because his firm "was never able to obtain a definitive ruling as to whether the federal rates were to be included," they were not.  There is no evidence in the record that Workers contacted the U.S. DOL.

¶5     In March 2000, Workers filed a "Little DBA" claim in the Fifteenth Judicial District, Roosevelt County.  On May 2, 2000, they voluntarily dismissed their Complaint without prejudice.  Workers subsequently filed the case currently on appeal on June 9, 2000, alleging that the WPSD, as owner of the federally-funded project, negligently failed to incorporate DBA prevailing wages into either the bid specifications or the contracts between it and its contractors (construction contracts). The complaint also alleged that WPSD failed to monitor the contractor and subcontractor(s) to assure that they paid their laborers prevailing wages.

3

The Workers sought recovery of an amount equal to retroactive DBA wages and penalties under § 39-3-206, MCA, and attorney fees under § 39-3-214, MCA.

¶6     The WPSD filed a Motion to Dismiss for 1) lack of subject matter jurisdiction, arguing the DBA did not give Workers a private right of action; 2) lack of personal jurisdiction over the School District; 3) failure of the Workers to give notice to the contractor and its surety under the Miller Act; 4) improper defendant; and 5) failure to sustain the burden of establishing the required elements for a class action suit.

¶7     Workers responded to the Motion by arguing, among other things, that 1) this is not a DBA claim but a negligence claim; 2) it cannot be a DBA claim because the DBA was not incorporated into the construction contracts; and 3) Workers have no Miller Act claim because no entity of the federal government is a party to the construction contract nor owner of the project, and the contractor was not contractually obligated to pay DBA prevailing wages, thus precluding Workers from a Miller Act remedy.

¶8     After a hearing on April 24, 2001, the court determined that under *State Med. Oxygen v. Amer. Med. Oxygen* (1988), 230 Mont. 456, 750 P.2d 1085, the Workers did not have the right to bring a private state action against a landowner stemming from the alleged violation of the federal DBA.  The court also concluded that a claim for negligence *per se* was inapplicable because the DBA was not intended to regulate owners of public buildings or public works, and that, therefore, a violation of the DBA by the WPSD would not subject it to a negligence *per se* cause of action.  Lastly, the District Court held that a common law

4

negligence claim could not stand because the "foreseeability" factor was absent. The court thereafter granted the WPSD's Motion to Dismiss. The District Court did not address the Workers' breach of contract claim. Workers filed a timely appeal.

**STANDARD OF REVIEW**

¶9 As indicated above, the issue before us on appeal is whether the District Court erred in granting the WPSD's Motion to Dismiss. We have held previously that "[m]otions to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Favel v. American Renovation and Constr. Co.*, 2002 MT 266, ¶ 8, 312 Mont. 285, ¶ 8, 59 P.3d 412, ¶ 8 (citations omitted). "In considering such motions, the complaint is construed in the light most favorable to the plaintiff and all allegations of fact contained therein are taken as true. The District Court's determination that it did not have jurisdiction over this case is a conclusion of law." *Favel*, ¶ 8 (citations omitted). "We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct." *Favel*, ¶ 8 (citations omitted).

**DISCUSSION**

¶10 Once again we are asked to determine whether the District Court has subject matter jurisdiction to hear and determine workers' common law claims stemming from alleged violations of the wage standards established by the Federal Davis-Bacon Act. In *Favel*, we exhaustively analyzed and interpreted the DBA as it applied to the facts in that case. It is

5

unnecessary to repeat that comprehensive analysis here because the issues decided in *Favel* are distinguishable from those presented by the District Court's Order dismissing the case before us. *Favel* may provide relevant guidance, however, as this case progresses after remand.

¶11    As did the defendant in *Favel*, the WPSD argued, among other things, that because the Workers' claims were based on failure to pay wages established by the DBA, Workers are limited to Davis-Bacon-prescribed remedies through either a Miller Act claim or other administrative relief procedures. The WPSD maintained that the District Court did not have jurisdiction over Workers' claims because there is no "private right of action" under the DBA. Moreover, the WPSD submitted that the Workers' Complaint should be dismissed for failure to satisfy the four-prong test set out in *State Med. Oxygen,* 230 Mont. at 460, 750 P.2d at 1087.

¶12    The District Court was unpersuaded by WPSD's argument that the Workers' remedy existed either administratively or in the Miller Act rather than in state court. We are likewise unpersuaded albeit for different reasons. Unlike in *Favel*, the construction contracts in this case did not incorporate reference to the DBA, much less provide for the payment of DBA wages. Moreover, there was not even a federal contracting party to these contracts. The remedy provisions of the Davis-Bacon regulations contemplate both the presence of a federal wage provision and a federal contracting party. 40 U.S.C.S. § 3142(a). Lacking both, the Workers could invoke no federal regulatory remedy. Given the circumstances, it was

6

therefore logical for the Workers to pursue their remedies in state court.

¶13 The District Court recognized that the Montana Constitution and statutory law vests the district courts with jurisdiction to hear "all civil matters and cases at law and in equity." Art. VII, Sec. 4, Mont. Const. Moreover, under § 27-1-202, MCA, an aggrieved party has the right to recover damages in state courts from persons at fault. The court concluded, however, that these rights were not without limitations and, relying on *State Med. Oxygen*, determined that before the Workers could maintain their private cause of action in state court for the alleged violation of the federal DBA, the following four-prong test must be satisfied:

> 1. Does the DBA create a federal right in favor of the plaintiff?
>
> 2. Is there any indication in the DBA that Congress intended, either explicitly or implicitly, to create such a remedy or to deny one?
>
> 3. Is it consistent with the underlying purposes of the DBA to imply such a remedy for the plaintiff?
>
> 4. Is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

¶14 The District Court determined that the first prong of this test was met and that the DBA expressly created a right to prevailing wages in favor of the Workers. It then concluded, however, that the second and third prongs were not met. The court explained that "[t]here is no indication in the Davis-Bacon Act that Congress intended to create a remedy against the owner of the public works project. Further, it is not consistent with the underlying purposes of the legislative scheme of the Davis-Bacon Act to imply such a remedy."

7

¶15    We disagree with the court's analysis and conclusion on this issue because it stems from the court's mistaken conclusion that the Workers are seeking a remedy <u>under</u> the DBA. As explained above, no DBA remedy was available to them.  Therefore, analysis under *State Med. Oxygen* is unnecessary and inappropriate.

¶16    It appears to be undisputed that the Workers were entitled to claim DBA wages.  It is further undisputed that the WPSD, as a federal-fund recipient, was subject to the DBA wage provisions.  29 C.F.R. § 5.5(a).  Lastly, the WPSD does not dispute that it was contractually obligated by its contract with the federal funding agency (the funding contract) to assure that DBA wage provisions would be included in its construction contracts with contractors and subcontractors.[1]  WPSD failed, however, to incorporate any reference to DBA wages into its bid specifications or the ensuing construction contracts.  It is this failure that resulted in a limitation on Workers' remedies.  Thus, the fact that their Complaint stems from non-payment of DBA wages does not, and indeed cannot under the facts here, convert the Workers' claims to administrative or Miller Act causes of action.

¶17    The Workers maintain that the WPSD, as a recipient of federal funds, had a statutory and contractual duty to incorporate the DBA wage provisions into its construction  contracts and that its failure to do so constituted negligence and breach of contract under state law. They assert that as a result of the WPSD's negligence and breach, the contractors and subcontractors were not required to pay DBA wages and, therefore, did not. Moreover, they

---

[1] Unfortunately, the funding contract was neither entered into evidence nor reviewed by the District Court prior to its dismissal of the Workers' Complaint.

argue that as a result of the WPSD's negligence and breach, the Workers have no remedy under the DBA and may only seek relief under state law. For the reasons set forth above, we agree.

¶18 In addition to analyzing the Workers' Complaint under *State Med. Oxygen*, the District Court also performed a common law negligence and negligence *per se* analysis. The court recited the four essential elements of a negligence claim: 1) existence of a duty; 2) breach of the duty; 3) causation; and 4) damages. The court then concluded that "foreseeability" as an element of "duty" was lacking and without it, there was no duty, and thus, no negligence. The District Court explained that the WPSD "could not have foreseen any damages to [Workers]. Under the Davis-Bacon Act, [the WPSD] could reasonably expect any wage claim would be covered by funds withheld by the Comptroller General or through the contractor's surety bond." However, the Workers had no DBA remedies precisely because the WPSD failed to perform its legal duty as recipient of federal funds, *i.e.*, it failed to take the necessary steps to ensure that its contracts required the payment of prevailing wages to its laborers. Thus, the underpinning of the District Court's foreseeability analysis, premised as it was on the Worker's ostensible rights to pursue DBA remedies, was flawed. For the same reason, the court's analysis of the Workers' negligence *per se* claims-- and its' dismissal of those claims--was flawed as well.

¶19 Lastly, Workers also stated a claim for breach of contract, presumably under a third party beneficiary theory. Workers claim that the WPSD breached its funding contract by failing to contractually obligate contractors and subcontractors to pay prevailing wages. The

9

District Court did not address this claim in its Order dismissing the case. Moreover, as indicated above, the District Court dismissed this case under Rule 12, M.R.Civ.P., before a substantive record could be developed. As noted above, the funding contract was not even in the record presented to this Court. As a result, we cannot determine the parameters of WPSD's contractual obligation under its funding contract to include DBA wages in its construction contracts, whether it breached this contract, and/or whether it was negligent in failing to perform its obligations as a recipient of federal funds. These determinations must be made following development of the record upon remand.

¶20    At the time the District Court issued its Order in this case, we had not yet issued our ruling in *Favel*. Upon remand, the District Court and the parties will have the benefit of *Favel* and any guidance it may provide.

¶21    Construing the Workers' Complaint in their favor and based upon our interpretation of their claims, we conclude the allegations contained in the Complaint are sufficient to survive the WPSD's request for dismissal and to vest the District Court with subject matter jurisdiction.

**CONCLUSION**

¶22    We hold that the District Court incorrectly concluded that it lacked subject matter jurisdiction over the Workers' Complaint.  Therefore, we reverse and remand to allow the Workers to proceed with their negligence and breach of contract action against the WPSD.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE

11